UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE BUTLER,<br>　　　　Plaintiff,<br>　　v.<br>BRENDON D. WOODS, et al.,<br>　　　　Defendants. | Case No. 21-cv-00867-VC<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 62, 77 |

　　　Butler's motion for summary judgment is denied. The defendants' motion for summary judgment is granted in part and denied in part. This ruling assumes that the reader is familiar with the facts and the arguments made by the parties.

　　　1. *Collateral Estoppel*. The state habeas court previously found that Butler's due process rights were violated by the long delay in bringing his case to trial, and that the public defender, district attorney, and trial court were all responsible for the delay to varying degrees. The court then granted Butler's habeas petition, dismissed his Sexually Violent Predator petition, and ordered him released. The California Court of Appeal affirmed. *See generally In re Butler*, 55 Cal. App. 5th 614 (2020), *review denied* (Jan. 27, 2021). Butler argues that collateral estoppel bars the defendants from re-litigating the question of whether his due process rights were violated.[1]

　　　Offensive collateral estoppel applies "only if (1) there was a full and fair opportunity to

---

[1] Butler does not seek collateral estoppel on the question of whether the defendants were deliberately indifferent to the violation of his rights. Opp., Dkt. No. 79 at 25. He only seeks collateral estoppel on the "foundational issue" of whether his due process rights were violated. *Id.*

litigate the identical issue in the prior action, (2) the issue was actually litigated in the prior action, (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Syverson v. International Business Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (citations omitted).

Collateral estoppel does not apply. The defendants did not have a full and fair opportunity to litigate Butler's claims in the habeas proceeding: it was litigated by the district attorney's office, not the defendants; the defendants had no control over the district attorney's actions; the defendants were not represented by counsel in that proceeding; the habeas proceeding did not provide the same procedural opportunities that are available in civil litigation; and the defendants did not have the same interests as the district attorney. *See Hays v. Clark County*, No. 207-CV-01395-LDG-PAL, 2008 WL 2372295, at *13 (D. Nev. June 6, 2008). For the same reasons, the defendants were not in privity with the district attorney's office. *Id.* at *14–15. Butler's motion for summary judgment on this issue is therefore denied.

2. *Statute of Limitations*. The defendants argue that Butler's claims based on acts that occurred more than two years before he filed his complaint are untimely because his claims began to accrue as early as 2009 when he told his public defender that his due process rights were being violated.

Under *Heck v. Humphrey,* Butler could not have brought his section 1983 claims before he succeeded on his habeas petition. 512 U.S. 477, 486 (1994). If he had brought those claims, and the court determined that his due process rights were violated, the "only possible remedy" would be dismissal and release. *People v. Superior Ct. (Vasquez)*, 27 Cal. App. 5th 36, 83 (2018). His section 1983 claims would have therefore called into question the validity of his confinement, and so he was barred from pursuing them until he was released. *Heck*, 512 U.S. at 486*.* Because he brought his claims within two years of that release, the claims are timely. *See Roberts v. County of Riverside*, No. EDCV191877JGBSHKX, 2020 WL 3965027, at *5 (C.D. Cal. June 5, 2020); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

*Mills v. City of Covina* does not warrant a different conclusion. 921 F.3d 1161 (9th Cir.

2

2019). *Mills* involved "constitutional violations and torts arising out of pre-conviction conduct that…[gave] rise to a claim that accrued *before* charges were ever filed and a conviction obtained." *Roberts*, 2020 WL 3965027, at *6. "Thus…[the section 1983 claim did not] 'necessarily imply the invalidity'" of Mills' conviction "because at the time the causes of action accrued, a conviction had not been secured." *Id. Mills* "simply recognize[d]" that applying *Heck* retroactively to toll the statute of limitations is inappropriate in circumstances "where the potential civil rights claim 'accrues pre-conviction' yet is never filed because of 'the *possibility* that Heck* may require dismissal.'" *Roberts*, 2020 WL 3965027, at *6 (quoting *Mills*, 921 F.3d at 1168). That rule does not apply here: there was no period of time where Butler's claims accrued but it was only speculative that *Heck* would apply; *Heck* always barred Butler's claims.

      3. *Monell Claim.* The defendants next argue that Butler cannot establish *Monell* liability. A *Monell* claim may be based on a policy of "inaction or omission," including a "failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). To bring that kind of claim, "a plaintiff must show…that [the] policy amounts to deliberate indifference to the plaintiff's constitutional right[,] and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Id.* (citations and quotations omitted). To establish deliberate indifference, a plaintiff must show that the defendants had actual or constructive notice that the policy of omission would likely result in a constitutional violation. *Id*. at 1145.

      As the defendants confirmed at the hearing, they did not move for summary judgment on the ground that Butler's constitutional rights were never violated. In the absence of that motion, Butler was not required to provide evidence of the constitutional violation. But even viewing the limited record in the light most favorable to Butler, there is a genuine dispute of material fact on that issue. *See, e.g.*, Dkt. No. 77-3 at 40–41; Dkt. No. 77-10 at 9.[2]

      And if Butler's due process rights were violated, there is plenty of evidence from which a

---

[2] All pages cited reference the pages as numbered by ECF.

3

jury could find municipal liability based on a policy of municipal inaction. There is evidence that the County and the Alameda County Public Defender "fail[ed] to implement procedural safeguards" to protect Butler's rights by failing to properly supervise the SVP unit. There was no supervisor assigned to the SVP unit, and no one reviewed whether the attorneys' caseloads were interfering with their ability to provide competent representation. Dkt. No. 79-2 at 13–14, 25–26; Dkt. No. 79-3 at 19. Bellas never inquired into the number of cases assigned to the attorneys in the unit or the number of cases going to trial. Dkt. No. 79-2 at 15–17. Nor did she ever ask SVP attorneys whether their workload was impacting their ability to provide competent representation. Dkt. No. 79-2 at 21. Woods likewise never evaluated the age of pending SVP cases, and he was not aware of the average number of cases tried every year. Dkt. No. 79-3 at 24, 48. Unlike most other branches of the public defender's office, no one represented the SVP unit at Woods' monthly branch head meetings, and so no one there provided insight into the pending cases. Dkt. No. 79-3 at 27–29.[3]

There is also evidence that this lack of supervision caused the deprivation of Butler's due process rights. The SVP unit was staffed by only two attorneys that handled all SVP cases (on top of not guilty by reason of insanity and mentally disordered offender cases). Dkt. No. 79-2 at 9. A memo from former SVP attorney David Feld to Bellas asserted that attorneys in the SVP unit were overworked and understaffed, leading to difficulties in bringing cases to trial. *See* Dkt. No. 79-6. The memo stated that the office needed to "take a hard look at the way we handle [SVP] cases," given their "complexity" and the "nature of the SVP assignment." *Id.* "With 25 gigantic cases and constant work on the MDO/NGI extensions (which result in several trials per year), it is simply impossible to keep up on every case, much less conduct the enormous amount of additional work necessary to prepare a case for trial." *Id.* Feld noted that an attorney in the unit is not "ready for trial until a minimum of 9-12 months in the assignment." *Id.* Other

---

[3] Butler additionally points to the Woods' subsequent decision to hire a supervisor for the SVP unit, but the Court has not considered that evidence for purposes of this motion, because Butler has not shown how it could be admitted at trial over a Rule 407 objection.

4

evidence supports this conclusion: several of Butler's attorneys did not take a single case to trial during their tenure in the unit. Dkt. No. 79-10 at 3; Dkt. No. 79-11 at 3; Dkt. No. 79-12 at 3. And Butler's case did not go to trial for 13 years.

Although the prosecutor and the state court contributed to the violation of Butler's constitutional rights, it is still possible that neglect and lack of supervision in the public defender's office was the "moving force" behind the violation. *Powers v. Hamilton County Public Defender Commission* is illustrative. 501 F.3d 592 (6th Cir. 2007). There, Powers was sent to jail after he failed to pay a fine in connection with a reckless driving charge. *Id.* at 597. He then brought a *Monell* claim alleging that the public defender's office had a policy or custom of failing to seek indigency hearings on behalf of criminal defendants facing jail time for fines. *Id.* To state a *Monell* claim, Powers had to show the policy was the "moving force" behind the deprivation of his constitutional rights, meaning it was a cause in fact and a proximate cause of the denial of his right to an indigency hearing. *Id.* at 608. The Sixth Circuit acknowledged that the proximate cause question was "thorn[y]" because the judge was ultimately responsible for the failure to hold an indigency hearing. *Id.* at 609. But the court held that the judge's conduct was not a superseding cause: "[w]ithout the Public Defender stepping forward to alert the court to Powers's alleged indigency, the court had no way of knowing that indigency was an issue germane to its sentencing determination." *Id.* at 611. "Only…where [defense counsel] has fully apprised the judge of the material facts, but the judge has misapplied the law, will [defense counsel] be shielded from liability." *Id.* at 610.

Here, the prosecutor and the state court may have contributed to the deprivation of Butler's constitutional rights by failing to bring the case to trial. But viewing the facts in the light most favorable to Butler, it is certainly possible that the public defenders did not tell the prosecutor or the court about all of Butler's demands for a trial (and that this, in turn, was caused by a custom of neglect and failure to supervise in the office). If the judge and the prosecutor were not "fully apprised" of those material facts, their failure to bring the case to trial cannot break the causal chain for the purposes of section 1983 liability.

5

Finally, there is evidence that the County and the Alameda County Public Defender were on actual or constructive notice that this policy of omission would result in the deprivation of Butler's rights. The Feld Memo put the defendants on notice that the SVP unit's workload and lack of supervision were causing delays in bringing cases to trial. Guidelines on indigent defense also stated that excessive workloads could compromise the ability of defense attorneys to provide competent representation. Dkt. No. 79-2 at 31. And *People v. Litmon* held that these kinds of delays could violate the Due Process Clause. 162 Cal. App. 4th 383, 399–406 (2008). Finally, Butler himself told his public defender that his due process rights were being violated as early as 2009. Given this evidence, summary judgment on the *Monell* claim is denied.

4. *Qualified Immunity*. Finally, the defendants argue that Bellas and Woods are protected by qualified immunity. To defeat qualified immunity, Butler must show that Bellas and Woods violated "clearly established law," meaning every reasonable official would have understood that the challenged conduct would violate Butler's constitutional rights. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Even assuming Butler's right to a speedy trial on his SVP petition was clearly established, he has not pointed to any case law suggesting that Bellas and Woods' lack of supervision in particular would violate that right. *Cf. Porter v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011) (analyzing, as part of qualified immunity, whether the defendant's "failure to promulgate [a] policy was objectively unreasonable in light of clearly established law"). And he has not argued this conduct would "so obvious[ly]" result in the deprivation of his rights that any reasonable official would be on notice. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Bellas and Woods are therefore entitled to qualified immunity, and the claims against them are dismissed.

**IT IS SO ORDERED.**

Dated: November 28, 2022

VINCE CHHABRIA
United States District Judge